**In re S.J.E.**

---

5. *Stanko v. Males*, 390 Pa. at 287, 135 A.2d at 395 (Pa. 1957).

*Jennifer Grimes,* for BCCYS.
*Wendie Ziegler,* guardian ad litem.

*John Grenko,* for mother.

KELLER, *J.*, January 11, 2011—This appeal stems from the involuntary termination of the parental rights of D.E. (hereinafter, "mother") to the above referenced children. An involuntary termination hearing was held on November 15, 2010. At that hearing, mother was represented by John Grenko, Esquire. At the conclusion of the hearing, this court took all of the evidence and testimony under advisement and deferred decision on the petition to terminate parental rights. After much consideration this court found that the facts alleged in Children and Youth Services petition were established by clear and convincing evidence and therefore forever terminated mother's rights to S.J.E. by order of court dated November 16, 2010. Mother timely filed a notice of appeal along with her concise statement of matters complained of on appeal to said order on December 15, 2010.

Mother alleges the following acts of error:

1. The learned trial judge erred in determining that mother, D.M.E., had failed to attempt to remediate the issues which at to the October 21, 2009 determination that her child was dependent under the Juvenile Act.

2. The learned trial judge erred in determining that mother failed to use her best efforts, given her incarceration, to remediate the issues which led to the October 21, 2009 determination that her child was dependent.

3. The learned trial judge erred in determining that it was in the best interests of the minor child to terminate mother's parental rights.

## DISCUSSION

Terminating the parental rights of the natural parent to his/her child carries with it a constitutional significance because of the importance of the right involved. *T.J.B. v. E.C.*, 652 A.2d 936, 943 (Pa.Super. 1995) (citing *In re J.W.,* 578 A.2d 952, 957 (Pa. Super. 1990). Consequently, clear and convincing evidence is necessary to prove the statutory grounds necessary to terminate parental rights. *Id.* The Superior Court aptly set forth the standard of review in *In re T.D.*, 949 A.2d 910, 914-15 (Pa.Super 2008) as follows:

Our standard of review regarding orders terminating parental rights is as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence. *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon CYS to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination. *Id.*

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S. §2511, which provides in pertinent part as follows:

Grounds for involuntary termination

(a) General rule.-The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will

not be remedied by the parent.

\*\*\*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

(b) Other considerations.-The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition. 23 Pa.C.S. §2511.

The court applies a two-part test for termination of parental rights. In *In re L.M.*, 923 A.2d 505, 511 (Pa. Super.

2007). The Superior Court has stated:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

We will begin by applying the two-prong test to the case at bar. First we note that the children were removed from the care of mother for at least six (6) months preceding the action to terminate parental rights. Moreover, mother has failed to remedy the conditions which led to the placement of her child and continued services will not remedy those conditions. Testimony from Berks County Children and Youth Adoption Social Worker, Carol Rentschler revealed the following:

> Ms. Grimes: And are you aware of mother's criminal history?

> Ms. Rentschler: Yes. Her criminal history extends back to 1995 where she was charged with prostitution, pled guilty, received a minimum of 12 months, and was incarcerated at Muncy. In 2005, she was charged with

prostitution and loitering, pled guilty, and received a maximum of 3 years and was incarcerated at Muncy. On April 14, 2007, she was charged with manufacturing, delivery, possession with the intent to manufacture, deliver, and possession, pled guilty with -- pled guilty to manufacturing, delivery, and possession with intent to manufacture and received a minimum of 2 years and maximum of 4 years.

Ms. Grimes: And how old is [S.J.E.] currently?

Ms. Rentschler: [S.J.E.] is 2.

Ms. Grimes: And how -- of that time of her son's life -- how much that time has mother spent not being incarcerated?

Ms. Rentschler: 2 months.

Ms. Grimes: And is the agency aware of whether mother cooperated with any services while she was incarcerated?

Ms. Rentschler: I don't have proof of any services that she's participated in. I do know that she told me that she is starting into a program now, yes.

Ms. Grimes: And how often did mother contact the Agency with regard to requesting information about her son?

Ms. Rentschler: We received five telephone calls that I have.

Ms. Grimes: Throughout the entire --

Ms. Rentschler: Throughout the time.

48

Ms. Grimes: -- placement?

Ms. Rentschler: Yes.

(Notes of testimony (hereafter N.T.), 11/15/10, at 8-10).

We believe that the most telling testimony in regards to mother's ability to parent her child was the following:

Ms. Grimes: Ms. Rentschler, would you please explain how [S.J.E.] came to the attention of the agency?

Ms. Rentschler: Yes. On October 13th, 2009 the agency received a report that [mother] had walked away from her halfway house and not returned for her child. Evidently, on October 8th, she had left the halfway house and left [S.J.E.] with another woman that resided there, and she hadn't returned, and it was October 13th, they called the agency to let us know that she hadn't returned.

Ms. Grimes: And at the detention hearing or -- excuse me. At the dependency hearing, which occurred on October 21, 2009, what occurred?

Ms. Rentschler: The court found that [S.J.E.] was again dependent with temporary legal custody transferred to Berks County Children and Youth with the goal of -- primary goal of return to mother, concurrent goal of placement and adoption. The court further ordered that mother should cooperate with parenting education, maintain stable and appropriate housing, participate in casework services, keep children and youth informed of any changes of residence, sign release of information, participate in a drug and alcohol evaluation and any treatment recommendations, and participate in a mental

health evaluation and any treatment recommendations.

Ms. Grimes: And was there any visitation that occurred between [S.J.E.] and his mother?

Ms. Rentschler: She visited with [S.J.E.] just one time --

\*\*\*

Ms. Grimes: And is that the only time -- the one and only time that the agency is aware that mother saw [S.J.E.] since his placement on October 13th, 2009?

Ms. Rentschler: Yes.

(N.T., 11/15/10, at 6-7).

We also note that mother is currently incarcerated and her earliest possible release date is November 2011. *Id* at 8. Based on the above testimony and the exhibits entered into evidence at the hearing this court believes that the conditions which led to the removal or placement of the child continues to exist and that termination of the parental rights of mother would best serve the needs and welfare of the small child involved.

As we believe that the first prong of the test has been satisfied we will now move on to the second prong which asks this court to consider the developmental, physical and emotional needs and welfare of the children pursuant to 23 Pa.C.S. § 2511. After reviewing the testimony, and considering the exhibits this court has no doubt that termination of parental rights will serve the best interests of the child. To date, mother has done little to nothing to remedy the situation which necessitated the involvement

of Children and Youth Services. Mother is currently incarcerated and has been so for essentially for the child's entire life, with the exception of two (2) months. Further, as the testimony revealed, mother simply left her child at a halfway house with another resident and never came back. These are not the hallmarks of good parenthood, nor do they exhibit intent to have one's child returned to one's care.

We do believe that mother loves her child, but love alone is not enough. She is simply unable to parent her child despite her desire to do so. The child is bonded to his caretaker who presents as a long term resource to him. At the earliest mother will be released from prison is November 2011. To have this child in a state of flux while mother bounces in and out of prison does not support his developmental, physical and emotional needs and is not in his best interest. He is presently in a stable environment being cared for by those who love him. To uproot him on the whim and prayer that mother will this time, when she has been unable to in the past, remain out of jail is just not practical. Therefore, we believe that termination of parental rights is the only course of action that will serve the needs and welfare of the child involved.

We note that the trial court, as finder of fact, is the sole determiner of credibility of witnesses. *In re Adoption of B.G.S.*, 614 A.2d 1161, 1168 (Pa. Super. 1992). This court has listened to the testimony of the Children and Youth case worker and has considered all of the exhibits. Again, while we believe that mother does love her child, we cannot in good conscious allow her to parent her young child without the proper tools. Although the agency has tried to help mother for a number of years, she has repeatedly and

consistently failed to follow through with the necessary steps to allow her to bring her child home to her. Although, before filing a petition for termination of parental rights, the commonwealth is required to make reasonable efforts to promote reunification of parent and child, the commonwealth does not have an obligation to make such efforts indefinitely. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003). The commonwealth has an interest not only in family reunification but also in each child's right to a stable, safe, and healthy environment, and the two interests must both be considered. *Id.* A parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the parent's failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment. *In Interest of Lilley*, 719 A.2d 327 (Pa. Super. 1998). Mother has tied the court's hands and we have no doubt that mother is unable to parent this child, and that involuntarily terminating her parental rights is in her child's best interests. Our courts have repeatedly stated that being a parent is more than a passive state of mind; it requires constant affirmative demonstration of parental devotion. *In re Adoption of M.J.H.*, 501 A. 2d 648 (Pa. Super. 1985).

Thus, for all of the reasons set forth above, and because we believe that none of mother's issues contain any merit, and that the needs of the four (4) minor children would be best served by the involuntary termination of mother's parental rights, we respectfully request that mother's appeal be denied.