J-S64015-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF: M.C.B. AND D.A.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.D.B., NATURAL FATHER | No. 988 WDA 2014 |

Appeal from the Order May 19, 2014
In the Court of Common Pleas of Erie County
Orphans' Court at No(s): 68 & 68a IN Adoption 2013

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 17, 2014**

J.D.B. (Father) appeals from the trial court's order involuntarily terminating his parental rights to his twin children, M.B. and D.B. (Children) (born July 2011).[1] Because Father made minimal progress in acquiring the necessary skills to parent Children, despite one year of assistance and county services, the court properly terminated his parental rights. Thus, we affirm.

Due to the fact that both Father and Mother have borderline mental capacities,[2] various social service agencies intervened to provide them in-home assistance with basic parenting skills. After months of assistance,

_____

[1] Mother's rights to children were terminated by separate order. She has not appealed that decision.

[2] Cognitive testing indicated that Father had an IQ of 78, in the borderline mental retardation range.

parents made minimal progress; Children were removed from the home in October 2012 and placed in a foster home.[3] On October 18, 2012, Parents stipulated with Erie County Office of Children and Youth (Agency) that Children would be adjudicated dependent. Parents admitted that Children had poor hygiene at their doctors' appointments, they made no progress with program interventions and services provided to them prior to Children's birth, Children were left in their cribs with soiled diapers and covered in feces, Father had trouble providing food for Children despite public assistance, gas service had been shut off to the family home, Father did not supervise Children appropriately and did not have the ability to meet the basic needs of Children. The Agency initiated services to assist with parenting, budgeting, conditions in the home and the basic needs of Children.

Despite almost one year's worth of assistance from two caseworkers, an occupational therapist, a nutritionist, a physical therapist, and representatives from service programs, Father has not progressed to the point of unsupervised visits with Children. In January 2014, the goal was changed from reunification to adoption.

_____

[3] In August 2012, re-referral was made to the Family Focus program due to concerns about the twins' lack of weight gain. However, despite intervention efforts, the Children were placed in foster care.

On May 16, 2014, the court held a termination hearing during which seven witnesses (including several Agency caseworkers, a licensed psychologist, a counselor, and Children's foster mother) testified. On May 19, 2014, the trial court entered an order involuntarily terminating Father's rights to Children pursuant to sections 2511(a)(1), (a)(2), (a)(5), and (b) of the Adoption Act.[4] This timely appeal follows.

On appeal, Father presents the following issues for our consideration:

(1)     Whether the trial court erred as a matter of law and/or abused its discretion in involuntarily terminating the Appellant's paternal rights pursuant to § 2511(a)(1), (2), and (5) when the Appellant complied with all of the services and only asked for more services and time to learn to parent the children, greatly loved the children, and wanted to parent the children.

(2)     Whether the trial court erred as a matter of law and/or abused its discretion in involuntarily terminating the Appellant's paternal rights pursuant to § 2511(b) when the statutory requirements for termination had not been met, the Appellant was bonded to the children, loved the children, and such finding was contrary to the best interests of the children.

Under 23 Pa.C.S. § 2511, the court must engage in a bifurcated process prior to terminating parental rights. *In re D.A.T.*, 91 A.3d 197 (Pa. Super. 2014). Initially, the focus is on the conduct of the parent. *Id.* The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination

_____

[4] 23 Pa.C.S. §§ 2101-2938.

delineated in section 2511(a). *Id. See also In re adoption of S.M.*, 816 A.2d 1117 (Pa. Super. 2003) (in termination matters, burden of proof is on party seeking termination to establish by clear and convincing evidence existence of grounds for doing so; court must examine individual circumstances of each and every case and consider all explanations offered by parent to determine if evidence in light of totality of circumstances clearly warrants termination).

Only after determining that the parent's conduct warrants termination of his or her parental rights must the court engage in the second part of the analysis: determination of the needs and welfare of the child under the standard of best interests of the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1004 (Pa. Super. 2008) (en banc). Although a needs and welfare analysis is mandated by the statute, it is distinct from and not relevant to a determination of whether the parent's conduct justifies termination of parental rights under the statute. *Id.* One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child. *Id.*

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *Id.*

Despite the fact that Father may have made a sincere effort to take advantage of services provided to him by the agency to fulfil his parental

obligations, it does not mean that he is capable of meeting Children's essential physical and emotional needs. In **Adoption of B.J.R.**, 579 A.2d 906 (Pa. Super. 1990), this Court stated:

> A parent who is incapable of performing parental duties is equally as unfit as one who is unwilling to do so. **In re Adoption of J.J.**, [] 515 A.2d at 891 [Pa. 1986] [quoting **In re William L.**, [] 383 A.2d 1228, 1239 (1978)[.] Accordingly, proceedings to terminate the parental rights of mentally or physically impaired parents do not require the application of a more stringent "beyond a reasonable doubt" burden of proof. **Id.** [] 515 A.2d at 892. What is important is the demonstrated willingness and *ability of the parent to perform, at a minimal level, his or her parental duties.* [] **Id.** at 608.

**Id.** at 913 (emphasis added).

The fact that Children "were never harmed [and] never suffered any physical or sexual abuse," Appellant's Brief, at 12, is not the standard by which we determine what is in their best interests. Moreover, the fact that Father may have "acted in good faith," *id.* at 13, and "complied with every service offered, and took advantage of every visit", *id.*, is also not the benchmark for being a fit parent. **See In re J.W.**, 578 A.2d 952, 959 (Pa. Super. 1990) (parenting requires "action as well as intent."). In addition, while Father, may feel that he needs further services or that he was never provided the proper services by the Agency, we remind him that the State is required to make *reasonable* efforts to promote family stability and preserve the family unit. **In re A.L.D.**, *supra*. Moreover, "when the goal of preserving the family unit conflicts with the reality of the child(ren)'s unmet irreducible essential needs, the dispositive question then becomes, to what

extent may the parent be helped to meet those needs *without* permitting those needs to go unmet." ***In re J.W.***, 578 A.2d 952, 959 (Pa. Super. 1990). A parent who cannot meet the irreducible minimum requirements set by the Juvenile Act within a reasonable time following state intervention may properly be considered "unfit," and may properly have parental rights terminated. ***Id.*** at 958.

Here, a caseworker testified that Parents were provided more services than she had seen given to any other family in her thirteen years of employment with the Agency. N.T. Termination Hearing, 5/16/2014, at 83-84. Moreover, another caseworker testified that there were no other temporary services that could be provided to help Father parent safely. ***Id.*** at 132.[5] The State is not required to extend services beyond what our legislature has deemed a reasonable time "or require Herculean efforts by CYS or other agencies after the goal has changed to adoption." ***In the Interest of Feidler***, 573 A.2d 587, 588 (Pa. Super. 1990); ***In the Interest of S.A.D.***, 555 A.2d 123, 124-25 (Pa. Super. 1989). Moreover, an agency is not required to provide services indefinitely if a parent is either unable or unwilling to apply the instruction given. ***In re R.T.***, 778 A.2d 670 (Pa. Super. 2001).

_____

[5] Caseworkers testified that Parents needed constant supervision to properly parent Children. N.T. Termination Hearing, 5/16/14, at 132.

Here, the record bears out the fact that the Agency provided Father with relevant and consistent services to increase his parenting skills to the level that he could be reunited with Children. However, the unfortunate fact remains that, despite his compliance with all services provided, Father's progress remains minimal at best. Serious safety concerns for Children continue to exist in the family home and Father does not have the ability to meet the basic needs of Children. Under these circumstances, Father is "unfit" to parent Children and termination is proper. *In re J.W.*, *supra*.

Instantly, Agency caseworkers testified that Father did not consistently follow through with proper feeding and nutrition for Children, did not remedy safety issues apparent in the family residence, and was unable to manage the home. These issues remained even after one year of services was provided to Parents. *See In the Interest of A.L.D.*, 797 A.2d 326 (Pa. Super. 2002) (if parent appears incapable of benefiting from reasonable efforts supplied over realistic period of time, county CYS has fulfilled its mandate and upon proof of satisfaction of reasonable good faith effort, termination petition may be granted). Accordingly, we agree that the trial court properly terminated Father's parental rights under sections 2511(a)(1) and 2511(a)(2).[6] *See* 23 Pa.C.S. § 2511(a)(1) (termination of parental

_____

[6] "[W]e need only agree with [a trial court's] decision as to any one subsection [of 2511(a), along with 2511(b),] in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

rights warranted where "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties"); 23 Pa.C.S. § 2511(a)(2) (termination of parental rights warranted where "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.").

Finally, with regard to the evidence necessary to support termination under section 2511(b) of the Adoption Act, we must consider whether the termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child. *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *See id.*

The fact that Father loves Children very much, Appellant's Brief at 14, and wants to be involved in every moment of their lives does not necessarily mean that he is capable of meeting their needs and welfare under 2511(b). Agency Caseworker Gaylene Abbott Faye testified that the Children walked

right by Parents in the courthouse hallway, did not recognize them, and do not ask about Parents. N.T. Termination Hearing, 5/16/14, at 137-38. Moreover, she testified that there has been no noticeable adverse effect on the Children since visitation ceased and that there would be no negative effect if Parents' rights were terminated. *Id.* at 138. A caseworker testified that Children never looked for affection or nurturing from Parents during visits. *Id.* at 134.

On the other hand, Children have developed a strong bond with foster parents, in whose care they had been for 20 months at the time of the termination hearing; they continue to thrive in their care. N.T. Termination Hearing, 5/16/14, at 103, 108-109. They have developed a strong attachment to the foster family and crave the structure and routine of the foster home. *Id.* at 141. Despite the bond Father may feel for Children, they do not have a recognized, reciprocal bond with him. Most important, however, is the fact that despite all of his efforts, the evidence demonstrates that Father is simply incapable of meeting Children's overall psychological and physical needs on his own. *See In re D.A.T.*, (Pa. Super. 2014) (termination under section 2511(b) warranted even where children recognized Mother and may miss her to some degree, testimony indicated that Mother is unable to meet child's emotional, physical, and developmental needs on her own or provide Child with healthy, safe environment, and had not been able to do so for almost two years prior to termination hearing; child's main sources of love, comfort, stability and security are foster

parents). Accordingly, the Agency met its burden by clear and convincing evidence and the trial court properly terminated Father's parental rights under section 2511(b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2014