J-S89018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.Z.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.T., MOTHER | No. 1924 EDA 2016 |

Appeal from the Order Entered May 24, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000246-2016
FID 51-FN-472320-2009

| | |
|---|---|
| IN THE INTEREST OF: B.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.T., MOTHER | No. 1928 EDA 2016 |

Appeal from the Order Entered May 24, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000245-2016
FID 51-FN-472320-2009

BEFORE:  SHOGAN, J., MOULTON, J., and FITZGERALD, J.[*]

MEMORANDUM BY MOULTON, J.:                    **FILED JANUARY 09, 2017**

---

[*] Former Justice specially assigned to the Superior Court.

M.T. ("Mother"), appeals from the decrees entered May 24, 2016 in the Philadelphia County Court of Common Pleas, which involuntarily terminated her parental rights to her sons K.Z.G., born in August 2007, and B.T., born in September 2014.[1]  We affirm.

On August 1, 2014, the Philadelphia Department of Human Services ("DHS") received a General Protective Services ("GPS") report alleging that Mother was in a mental health facility, had left K.Z.G. with an inappropriate caregiver, and lacked appropriate housing.  That same day, DHS obtained an order of protective custody ("OPC") and placed K.Z.G. in a foster home.  On August 4, 2014, the trial court held a shelter care hearing, after which it lifted the OPC and ordered K.Z.G. temporarily committed to the custody and care of DHS.  The trial court subsequently held an adjudicatory hearing on September 9, 2014, after which K.Z.G. was adjudicated dependent and committed to the custody and care of DHS.  At that time, DHS and the trial court were aware that Mother had a significant drug history and had failed to care for her children in the past.

On September 16, 2014, DHS received a GPS report stating that Mother tested positive for phencyclidine ("PCP") at B.T.'s birth the day before, had not received any prenatal care, had a history of failing to care

_____

[1] The trial court also terminated the parental rights of M.G., K.Z.G.'s putative father, and any putative father of B.T.  Neither M.G. nor any putative father of B.T. has filed an appeal.

for her children, and had a history of drug abuse. The GPS report also provided that B.T. had tested positive for PCP. When B.T. was released from the hospital on January 9, 2015, DHS obtained an OPC for B.T. On January 12, 2015, the trial court held a shelter care hearing, after which it lifted the OPC and ordered B.T. temporarily committed to the custody and care of DHS. The trial court subsequently held an adjudicatory hearing on January 21, 2015, after which B.T. was adjudicated dependent and committed to the custody and care of DHS.

The trial court, through a Master, held permanency review hearings regarding the placement of K.Z.G. and B.T. throughout 2015. Mother was incarcerated in December 2015 and she is not eligible for release until May 2017.

On March 16, 2016, DHS filed petitions for a goal change to adoption and petitions seeking involuntarily termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). On May 24, 2016, the trial court held a hearing on the termination petitions. At the hearing, the trial court heard testimony from Karima Muhammad, a Community Umbrella Agency case manager from Asociación Puertorriqueños en Marcha ("APM"), and Mother. Thereafter, the trial court entered decrees terminating Mother's parental rights to K.Z.G. and B.T.

On June 21, 2016, Mother timely filed a notice of appeal, together with a statement of matters complained of on appeal, pursuant to Pennsylvania

J-S89018-16

Rule of Appellate Procedure 1925 ("Rule 1925"). The trial court issued a Rule 1925(a) opinion. *See* Trial Ct. Op., 8/3/16, at 1 ("1925(a) Op.").

Mother raises five issues on appeal:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, M.T. pursuant to 23 Pa. C.S.A. sections 2511(a)(1) where Mother presented evidence that she made efforts to perform her parental duties.

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, M.T. pursuant to 23 Pa. C.S.A. sections 2511(a)(2) where Mother presented evidence that she has remedied her situation by participating in a drug and alcohol program and parenting classes.

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, M.T. pursuant to 23 Pa. C.S.A. sections 2511(a)(5) where evidence was provided to establish that the child was removed from the care of the Mother and Mother is capable of caring for the child when released from incarceration.

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, M.T. pursuant to 23 Pa. C.S.A. sections 2511(a)(8) where evidence was presented to show that Mother is capable of caring for the child when released from incarceration.

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, M.T. pursuant to 23 Pa. C.S.A. sections 2511(b) where evidence was presented that DHS never observed the child with the Mother at any time.

Mother's Br. at 7.

We consider Mother's issues mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis. We have stated:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). The petitioner must "prove by clear and convincing evidence that [the] asserted [statutory] grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009). This Court need only agree with the trial court's determination under any one subsection of

section 2511(a), along with section 2511(b), in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

We conclude that the trial court properly terminated Mother's parental rights under sections 2511(a)(2) and (b), which provide:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

To terminate parental rights under section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: "(1) repeated and continued incapacity, abuse, neglect or refusal;

(2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003).

Our Supreme Court has instructed that incarceration:

> while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 [Pa.C.S.] § 2511(a)(2). [*See In re: E.A.P.*, 944 A.2d 79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

*In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012) (some internal citations omitted).[2]

_____

[2] Further, the Supreme Court stated that:

> If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's

*(Footnote Continued Next Page)*

- 7 -

Mother argues that the trial court abused its discretion by terminating her parental rights. Mother's Br. at 15. According to Mother, she has "participated in several programs, while incarcerated, to meet her goals and objectives." *Id.* at 16. With respect to all four grounds for termination considered by the trial court, Mother asserts that she cooperated with DHS in order to meet a number of objectives, including participation in drug and alcohol counseling, parenting classes, and employment through the prison kitchen. *Id.* at 15-18.

The trial court found that termination was appropriate under section 2511(a)(2). In support of its conclusion, the trial court cited the September 15, 2015 suspension of Mother's visits with the children after she appeared intoxicated at the visits, which were never reinstated;[3] Mother's refusal to participate in drug screens and a mental health evaluation; and Mother's incarceration since December 2015. 1925(a) Op. at 4. The trial court also found that Mother made no effort to complete any of DHS's and APM's single-case-plan objectives, which required Mother to "1) complete drug and alcohol treatment, 2) complete mental health treatment, 3) obtain

_____
*(Footnote Continued)*

incarceration will factor into an assessment of the child's best interest.

*In re Adoption of S.P.*, 47 A.3d at 830-31.

[3] Mother's resumption of visits with the children was conditioned on her compliance with random drug screens and treatment.

appropriate housing, 4) comply with random drug screens, 5) complete [an] anger management class . . . and, 6) complete [a] parenting class."[4] *Id.* at 3.

The trial court's credibility determinations and factual findings are supported by the record and it did not abuse its discretion by terminating Mother's parental rights under section 2511(a)(2). While Muhammad recognized that Mother is enrolled in a parenting class in prison, she confirmed that Mother has never **completed** drug and alcohol treatment, mental health treatment, or anger management. N.T, 5/24/16, at 23-24. Muhammad also stated that Mother did not make herself available to APM, was not compliant with court-ordered random drug screens, and did not avail herself of drug and alcohol treatment until she was incarcerated. *Id.* at 25-27. Further, DHS entered into evidence reports showing that Mother failed two drug screens, failed to appear without excuse for two others, and possibly tampered with another drug screen. *Id.* at 26. The evidence further established that Mother failed to comply with the court's permanency plan and that her visits with the children were suspended and remained suspended because she did not participate in drug screens and treatment. *Id.* at 28.

---

[4] Although the trial court made this finding during its discussion of section 2511(a)(1), it also is relevant to the issue of whether termination is proper under section 2511(a)(2).

Mother testified that, during her incarceration, she is receiving drug and alcohol treatment and taking a parenting class. *Id.* at 38. However, Mother did not present evidence that she attempted to comply with her objectives before incarceration. We have long held that "adequate parenting requires 'action as well as intent' . . . . [as] [p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities."[5] *In re A.L.D.*, 797 A.2d 326, 340 (Pa.Super. 2002) (quoting *In re J.W.*, 578 A.2d 952, 959 (Pa.Super. 1990)). Further, "a parent's vow to cooperate, after a long period of uncooperativeness regarding the necessary or availability of services, may properly be rejected as untimely or disingenuous." *Id.* at 340. Here, the evidence shows that: Mother failed to raise her children in a safe environment, as she lacked adequate housing and abused drugs; Mother continued to lack adequate housing and abuse drugs after the children were removed from her custody; and she is now incapable of caring for them during her incarceration. When presented with help from DHS and APM, she rejected their assistance and refused to make any effort towards meeting her objectives, attempted to conceal her drug usage from the court, and failed to comply with minimum

---

[5] "[A] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to full his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004).

objectives of screening and treatment to resume visitation with the children. Under similar circumstances, we have upheld the termination of parental rights, as this pattern of behavior, regardless of incarceration, demonstrates incapacity to properly parent.[6] *In re C.L.G.*, 956 A.2d 999, 1008 (Pa.Super. 2008) (*en banc*) (evaluating parent's pattern of pre-incarceration behavior and possible effect on child). In sum, we conclude that the record supports the trial court's findings of fact and the trial court did not abuse its discretion in terminating Mother's parental rights under section 2511(a)(2).

Next, we review the termination of Mother's parental rights pursuant to section 2511(b). When a trial court determines that grounds for termination exist under section 2511(a), the trial court must then consider "whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child[ren]." *In re M.T.*, 101 A.3d 1163, 1181 (Pa.Super. 2014). While section 2511(a) focuses on the parent's conduct, section 2511(b) focuses on the child. *In re C.L.G.*, 956 A.2d at 1008. "We have emphasized that while a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the trial court when determining what is in the best interest of the child."

---

[6] Further, "Pennsylvania law does not compel [continued efforts at reunification] just because an incarcerated parent participates in prison programs . . . . [as t]he complete circumstances of the case must be considered." *In re Z.P.*, 994 A.2d 1108, 1125 (Pa.Super. 2010).

- 11 -

*In re A.D.*, 93 A.3d 888, 897 (Pa.Super. 2014). "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008). "The trial court should also examine the intangibles such as the love, comfort, security, and stability the child might have with the foster parent." *Id.* at 763.

Mother argues that the trial court abused its discretion by terminating her parental rights pursuant to section 2511(b). According to Mother, DHS did not present sufficient evidence concerning the effect, or lack thereof, that termination would have her children. Mother's Br. at 19. Mother asserts that Muhammad never observed interactions between Mother and the children, and "[t]herefore, it is naturally impossible for the social worker to make an accurate assessment or recommendation as to the parental bond between Mother and the children." *Id.* Further, Mother claims that Muhammad could not state "there would be no irreparable harm to the children when she never saw [them] interact with . . . Mother." *Id.* We disagree.

The trial court found that termination of Mother's parental rights was appropriate under section 2511(b). In support of its conclusion, the trial court cited the children's placement in pre-adoptive homes, where their foster parents have met their daily needs. 1925(a) Op. at 5. The trial court also found that the children lack a parent-child bond with Mother, as Mother refused to participate in the children's services and K.Z.G. never asked to

- 12 -

visit with Mother. *Id.* Based on those facts, the trial court found that "neither child would suffer irreparable harm if [Mother's] parental rights were terminated," and "it would be in the best interest of both children [if Mother's] parental rights were terminated and they were freed for adoption." *Id.* at 6.

We conclude that the record supports the trial court's determination that there was no bond between Mother and the children that, if severed, would be detrimental to the children, and that termination of Mother's parental rights would best serve the needs and welfare of the children. Muhammad testified that Mother made no effort to resume visits with the children, let alone participate in any of their services, and that it was in the children's best interests to terminate Mother's parental rights. N.T., 5/24/16, at 26-27, 29. Further, Muhammad testified that K.Z.G. stated "he didn't like [Mother[,] . . . [Mother] made him angry," and he never asked to visit with Mother. *Id.* at 29-30. Muhammad also testified that the foster parents met the children's daily needs. *Id.* at 29. She also believed that neither K.Z.G. nor B.T., whom Mother has not seen in at least a year, has a bond with their Mother, and that neither child would suffer irreparable harm if the trial court terminated Mother's parental rights.[7] *Id.* Mother also

_____

[7] We have long held that section 2511(b) "does not require a formal bonding evaluation" and "[w]hen conducting a bonding analysis, . . . court[s are] not required to use expert testimony." *Z.P.*, 994 A.2d at 1121. Social

*(Footnote Continued Next Page)*

testified that she had not seen the children for approximately one year. ***Id.*** at 39. Therefore, the trial court did not abuse its discretion by terminating Mother's parental rights pursuant to section 2511(b).

Accordingly, we affirm the decrees terminating Mother's parental rights based on section 2511(a)(2) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/9/2017

---

*(Footnote Continued)* ————————

workers and caseworkers may offer their evaluations as to the parent-child bond. ***Id.***