J-S43042-17
J-S43043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: M.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.P., NATURAL FATHER | No. 336 WDA 2017 |

Appeal from the Order January 26, 2017
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): CP-02-AP-0000073-2016

| | |
|---|---|
| IN THE INTEREST OF: M.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.A.C., NATURAL MOTHER | No. 337 WDA 2017 |

Appeal from the Order Entered January 26, 2017
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): CP-02-AP-0000073-2016

BEFORE: STABILE, SOLANO, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED SEPTEMBER 07, 2017**

In these related appeals, J.A.C. ("Mother") and J.P. ("Father")[1] appeal

from the order dated and entered January 26, 2017, involuntarily

---

[*] Former Justice specially assigned to the Superior Court.

[1] Mother identified Father as Child's natural father at birth. Father, however, did not acknowledge paternity until after he completed genetic testing on September 4, 2015.

terminating their parental rights to their minor son, M.P. ("Child"), born in December 2014. We affirm.

The relevant facts and procedural history of this case are as follows. Child was born addicted to methadone. As a result, Allegheny County Office of Children, Youth and Families ("CYF") filed an Emergency Custody Action, which the trial court granted, and transferred Child to A Children's Home in Pittsburgh, where he went through methadone withdrawal. N.T., 8/11/16, at 18. Thereafter, on February 9, 2015, Child moved to his current foster home placement. *Id.* The trial court adjudicated Child dependent on March 26, 2015.

At the time of Child's removal, CYF was familiar with Mother since 2010, having removed her two other children due to her substance abuse, mental health issues, and criminal history.[2] Accordingly, CYF established the following Family Service Plan ("FSP") goals for Mother: upgrade her drug and alcohol treatment, visit with Child, obtain an evaluation with Allegheny Forensic Associates ("AFA"), maintain appropriate housing, and communicate with CYF. *Id.* at 39. Father has an extensive criminal history, and his goals included maintaining sobriety, visitation with Child,

---

[2] Mother's rights to her other children were subsequently terminated by consent. Child does not share the same father as Mother's two other children.

maintaining appropriate housing, taking random drug screens, and maintaining contact with CYF. *Id.* at 26.

According to the CYF caseworker, Lawrence Restivo ("Restivo"), both Mother and Father failed to make substantial progress with respect to their individual FSP goals. Notably, Mother missed drug screens, missed or arrived late to visits, and failed to appear for her individual evaluation. *Id.* at 83-85, 107, 116-18, 156. In fact, of the ten scheduled drug screenings, Mother refused twice and failed to appear four times. Likewise, Father failed to provide CYF with documentation of his drug and alcohol treatment, failed to attend random drug screenings, participated in only eight out of forty visits with Child, and did not maintain contact with CYF. *Id.* at 28, 30-33, 38-39, 119; N.T., 11/3/16, at 10-11, 15-17, 34-35.

On April 15, 2016, CYF filed a petition to involuntarily terminate the parental rights of Mother and Father to Child. The trial court held hearings on the termination petition on August 11, 2016 and November 3, 2016. Dr. Terry O'Hara, Ph.D. ("Dr. O'Hara"), a licensed psychologist, conducted two psychological interactional evaluations—one with Child and Mother, and one with Child and his foster mother. Petitioner's Exhibit 4. Mother failed to appear for her individual evaluation. Dr. O'Hara testified that he had "concerns about [Mother's] level of stability[, i]ncluding her acknowledged [sic] testing positive for cocaine within the last three hearings even though she is clearly under the microscope and she had lost custody of several

children." N.T., 11/3/16, at 61. Mother also reported to Dr. O'Hara that she had been clean for just the past two weeks and "acknowledged to having [] five relapses within the year [Dr. O'Hara] was evaluating her." *Id.* at 58. While Dr. O'Hara noted that Mother demonstrated some "positive parenting skills" during the evaluation, he explained that there were some parenting deficits as well. In particular, Dr. O'Hara stated that Mother "was unsure about her son's specific developmental needs" and was not "attuned to [Child's] cues." *Id.* at 61-62.

By order dated January 26, 2017, the trial court involuntarily terminated Mother's and Father's parental rights. Mother and Father filed separate timely notices of appeal.

Mother presents the following claims on appeal:

> 1. Did the [t]rial [c]ourt abuse its discretion and err in granting the Petition for Involuntary Termination of Parental [] Rights pursuant to 23 P[a].C.S.[] § 2511(a)(2), (5) and (8)?
>
> 2. Did the [t]rial [c]ourt abuse its discretion and err as a matter of law in determining that the involuntary termination of [Mother's] parental rights pursuant to 23 P[a].C.S.[] § 2511(a)(2), (5) and (8) of the [A]doption [A]ct best serves the needs and welfare of [Child]?

Mother's Brief at 5. Father asserts that the trial court abused its discretion in determining that the termination of his parental rights would serve the needs and welfare of Child pursuant to 23 Pa.C.S. § 2511(b). Father's Brief

- 4 -

at 5. As Mother's and Father's issues require application of the same bodies of law, we will address them together.

Our standard of review in cases involving termination of parental rights is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by statute. *See* 23 Pa.C.S. § 2511. The portion of the statute relevant to these cases provides as follows:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), (b).

Under section 2511 of the Adoption Act, the trial court must engage in a bifurcated process. *In re Adoption of R.J.S.,* 901 A.2d 502, 508 (Pa. Super. 2006). First, the trial court must examine the parent's conduct. *See In re A.L.D.*, 797 A.2d 326, 339 (Pa. Super. 2002). The burden of proof is on the petitioner to establish by clear and convincing evidence the existence of grounds for termination under section 2511(a). *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003). If termination is found by the trial court to be warranted under section 2511(a), it must then turn to section 2511(b), and determine if termination of the parent's rights is in the child's best interest. *In re Adoption of R.J.S.,* 901 A.2d at 508. If the trial court's decision is supported by competent evidence, this Court must affirm the decision "even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003) (citations omitted).

Applying these principles to the cases at bar, we first look at the termination of Mother's rights to Child under section 2511(a).[3] The trial court terminated Mother's parental rights pursuant to section 2511(a)(2),

---

[3] In his brief, Father concedes that CYF presented clear and convincing evidence that his parental rights should be terminated pursuant to section 2511(a)(2). Father's Brief at 11 ("In the present case CYF, the petitioner, did clearly and convincingly establish threshold grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2)).

(5), (8) and (b). This Court need only agree with the trial court's decision as to any one subsection of section 2511(a) in order to affirm the termination. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will therefore examine the facts under section 2511(a)(2).

To terminate parental rights pursuant to section 2511(a)(2), an agency must prove by clear and convincing evidence that the following three elements have been met:

> (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). Further, "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d at 337 (citations omitted).

Mother argues that she has remedied the FSP goals put in place by CYF. Mother's Brief at 7-10. Namely, Mother asserts that she has maintained stable housing and recently completed in-patient drug and alcohol treatment. *Id.* No relief is due.

The evidence indicates that Child was initially removed from Mother's care because he was born addicted to methadone and Mother had failed to

address her mental health issues. Mother's attempts at achieving her goals were inconsistent, half-hearted and intermittent. N.T., 11/3/16, at 140-50. Mother missed drug screenings, failed to appear for her scheduled individual evaluation, and missed over half of the visits with Child. N.T., 8/11/16, at 83-85, 107, 116-18, 156. By failing to address her mental health issues or to undergo drug and alcohol treatment until after the termination petition was filed, Mother's behavior showed that she is unwilling to provide a safe and nurturing home for Child. Although Mother obtained adequate housing and is attempting to address her substance abuse issues, she was not in a position to assume the caregiver role for Child at the time of the termination hearing. N.T., 8/11/16, at 42. Restivo's testimony further demonstrates that Mother resisted complying with the requirements necessary for reunification with Child and that the causes of Mother's incapacity, neglect, or refusal cannot or will not to be remedied. Moreover, Dr. O'Hara's and Restivo's testimony supports the trial court's determination that Mother's repeated and continued incapacity, neglect, or refusal to cooperate with CYF has caused Child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being.

Accordingly, we reject Mother's assertion that the trial court erred in terminating her parental rights based on her efforts to fulfill her FSP goals. Therefore, we discern no abuse of discretion by the trial court in terminating Mother's parental rights pursuant to section 2511(a)(2).

We now turn our attention to section 2511(b) and the trial court's determination that termination was in the best interests of Child. Because the trial court appears to have examined the Child's bond to both parents together in its findings, we will likewise address both parents in a single analysis.

Under section 2511(b), termination of parental rights must best serve the developmental, physical, and emotional needs and welfare of the child. *In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.*

The mere finding of a parent-child bond does not preclude termination of parental rights. *See In re T.S.M.*, 71 A.3d at 267. Rather, the trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *In re Adoption of T.B.B.*, 835 A.2d at 397 (citation omitted). "[A] court may properly terminate parental bonds which exist **in form** but not **in substance** when preservation of the parental bond would consign a child to an indefinite, unhappy, and unstable future devoid of the irreducible

minimum parental care to which that child is entitled." ***In re J.W.***, 578 A.2d 952, 958 (Pa. Super. 1990) (citations omitted).

Father and Mother argue here that the trial court improperly relied on Child's relationship to foster mother and failed to analyze the effects of termination on Child. Father's Brief at 14-15; Mother's Brief at 14-15. No relief is due.

In addressing the best interests and welfare of Child, the trial court found:

> In determining that termination of parental rights best served the needs and welfare of Child, [the trial court] considered the history of the parents, the fact that Child has only known his foster parents as parents since birth, as well as the testimony of Dr. Terry O'Hara of Allegheny Forensic Associates, who performed the evaluations in this case and Mother's former case.
>
> In the instant case, Dr. O'Hara did not perform an evaluation of Father but did evaluate Mother with Child, and Child's Foster Mother. Two individual evaluations were scheduled for Mother but she did not attend either one. [Dr. O'Hara] did, however, evaluate Mother with Child and did not find her stable enough to parent and found her not to recognize Child's cues.
>
> Dr. O'Hara also testified regarding the removals of Mother's older children, noting one child had been hanging out of a window, that Mother was, at that time, homeless and had abandoned her drug treatment. He testified Mother needed intensive treatment and that she "rambled" when speaking. [Dr. O'Hara] stated Mother's mental health diagnosis is opioid dependency, adjustment disorder, mood disorder, anxiety disorder, and histrionic personality disorder.

> Importantly, Dr. O'Hara noted that Child was well bonded with his foster mother, having lived with her his whole life. Conversely, Dr. O'Hara stated that it was very unlikely Child could have bonded well with Father, having only had 8 visits with him in 2 years. With regard to Mother, [Dr. O'Hara] stated that he saw no evidence that Mother could parent Child.
>
> Dr. O'Hara noted Child has been living together in a stable and loving home for over two years, forming a primary bond with his foster parent. Dr. O'Hara testified that Child's needs are being met in this home and that he has a secure attachment with his foster mother. In fact, Dr. O'Hara stated that removal from this stable home without a guarantee that he would be placed into a stable environment would be harmful to him.

Trial Ct. Op., 3/29/17, at 8-9 (citations to record omitted).

The record supports the trial court's findings that Child's primary bond is with his foster mother rather than Mother or Father. Further, the record supports the court's finding that Child will not suffer irreparable harm if Mother's and Father's parental rights are terminated. It was within the trial court's discretion to accept Dr. O'Hara's opinions and recommendations and to conclude that the benefits of a permanent home with his foster mother would outweigh any emotional distress that Child might experience if his relationship with Mother and Father ended. Thus, we find no error or abuse of discretion in the trial court's conclusion under subsection (b) that Child's developmental, emotional and physical needs and welfare were best met by terminating Mother's and Father's parental rights. *See* N.T., 8/11/16, at 177-182; N.T., 11/3/16, at 48-83.

Lastly, Father raises an additional issue for review. He contends that our Supreme Court's recent decision in ***In re Adoption of L.B.M.***, 161 A.3d 172 (Pa. 2017) requires that we reverse the termination of Father's parental rights and remand the case for the appointment of separate counsel for Child pursuant to 23 Pa.C.S. § 2313(a).[4] Father's Brief at 16.

In ***L.B.M.***, our Supreme Court held that trial courts must appoint counsel to represent the legal interests of any child involved in a contested termination proceeding pursuant to 23 Pa.C.S. § 2313(a). ***See In re Adoption of L.B.M.***, 161 A.3d at 183. The Court explained that a child's legal interests are distinct from his or her best interests, in that a child's legal interests are synonymous with the child's preferred outcome, while a

---

[4] Section 2313(a) provides as follows.

> **(a) Child.—**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

Here, this Court granted CYF's and the guardian *ad litem*'s applications to file supplemental briefs addressing ***L.B.M.*** We have received the supplemental briefs as well as Father's responsive brief.

child's best interests must be determined by the court. *Id.* at 174. While our Supreme Court held in *L.B.M.* that courts must appoint counsel, the justices disagreed on whether the role of counsel may be filled by a child's existing dependency guardian *ad litem* ("GAL"). *See id.* at 183. In the Court's lead opinion, Justice Wecht, joined by Justices Donohue and Dougherty, opined that a child's legal interests cannot be represented by his or her dependency GAL. *Id.* at 181-82. However, the Court's remaining four justices disagreed with that portion of the lead opinion and opined in a series of concurring and dissenting opinions that a child's dependency GAL may serve as his or her counsel, so long as the GAL's dual role does not create a conflict of interest. *See id.* at 183-93. Notably, Chief Justice Saylor and Justices Mundy, Baer and Todd were of the opinion that "in cases involving young children or children with limited capacity, the child may be unable to express a separate legal interest to an independent attorney appointed in addition to the GAL attorney, but would nevertheless be required to have one appointed under the plurality's interpretation." *Id.* at 192 (Mundy, J., concurring).

While Father concedes that Child was represented by his dependency GAL during the termination hearing, Father insists that representation by a GAL, who is also an attorney, does not comply with Section 2313(a). Father's Brief at 16.

Shortly following our Supreme Court's decision in **L.B.M.**, this Court decided **In re D.L.B.**, __ A.3d __, 2017 WL 2590893 (Pa. Super. June 15, 2017). Similar to the case *sub judice*, the appellant in **D.L.B.** argued that section 2313(a) required the appointment of separate counsel for a child in a contested termination proceeding. **Id.** at *5. The appellant argued that the trial court's failure to appoint separate counsel was structural error, which required this Court to remand the matter for the appointment of separate counsel pursuant to **L.B.M.**. **Id.**

In rejecting the appellant's claim, this Court stated:

> As a point of information, Justice Wecht's opinion in **L.B.M**[.] states that the trial court is required to appoint a separate, independent attorney to represent a child's legal interests even when the child's GAL, who is appointed to represent the child's best interests, is an attorney. Justice Wecht would hold that the interests are distinct and require separate representation. While Justice Wecht, joined by Justices Donohue and Dougherty, sought to so hold, four members of the court, Chief Justice Saylor and Justices Baer, Todd, and Mundy disagreed in different concurring and dissenting opinions with that part of the lead opinion's holding. Specifically, while the other justices agreed that the appointment of counsel for the child is required in all [termination of parental rights] cases and that the failure to do so by the trial court is a structural error, they did not join that part of Justice Wecht's opinion which sought to hold that the GAL may never serve as counsel for the child. **Rather, such separate representation would be required only if the child's best interests and legal interests were somehow in conflict**.

**Id.** (emphasis added).

- 15 -

We decline to grant relief on Father's argument invoking *In re Adoption of L.B.M.* The record before us reveals that Attorney Gregory Engle, the GAL who represented Child at the termination hearing, zealously represented both Child's legal and best interests, and those interests were not in conflict. At the time of the termination proceeding, Child was a non-verbal two year old. Petitioner's Exhibit 4. Dr. O'Hara further found that Child is closely bonded with his foster mother and found no evidence that Child could have formed a meaningful attachment to Father based on Father's eight visits with Child. Accordingly, we discern no basis to afford Father relief based on *L.B.M.*[5] *See In re D.L.B.*, 2017 WL 2590893, at *7. Indeed, Child is arguably the type of child the dissenting and concurring justices in *L.B.M.* envisioned as too young or too cognitively incapacitated to express his wishes.

Based on the foregoing, we affirm the order of the trial court.

Order affirmed.

---

[5] To the extent that Father argues that *D.L.B.* was wrongly decided, we recognize that "[i]t is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court." *Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa. Super. 2006).

J-S43042-17
J-S43043-17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2017