J-A15029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3090 EDA 2019 |

Appeal from the Order Entered October 25, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000293-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: S.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3091 EDA 2019 |

Appeal from the Order Entered October 25, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002613-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: R.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3092 EDA 2019 |

Appeal from the Order Entered October 25, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000292-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: R.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-A15029-20

APPEAL OF: A.K., MOTHER : :

: No. 3093 EDA 2019

Appeal from the Order Entered October 25, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002612-2016

IN THE INTEREST OF: K.K., A : IN THE SUPERIOR COURT OF
MINOR : PENNSYLVANIA

APPEAL OF: A.K., MOTHER :

: No. 3094 EDA 2019

Appeal from the Order Entered October 25, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000294-2018

IN THE INTEREST OF: K.K., A : IN THE SUPERIOR COURT OF
MINOR : PENNSYLVANIA

APPEAL OF: A.K., MOTHER :

: No. 3095 EDA 2019

Appeal from the Order Entered October 25, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002614-2016

BEFORE: LAZARUS, J., KING, J., and STRASSBURGER, J.[*]

---

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

J-A15029-20

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 11, 2020**

A.K. (Mother) appeals from the orders, entered in the Court of Common Pleas of Philadelphia County, involuntarily terminating her parental rights to her three minor children, R.N. (born 07/12), S.N. (born 01/14), and K.K. (born 10/16) (collectively, Children) and changing Children's permanency goal from reunification to adoption.[1]  Upon careful review, we affirm.

The trial court set forth the relevant facts and procedural history of this case, in part, as follows:

> [Children] have been in [the] care [of the Philadelphia Department of Human Services (DHS)] for over two years.  DHS initially became involved with this family when Mother went to the emergency room for an infection while she was pregnant with [K.K.] and test[ed] positive for heroin.  In January 2017, [Children] were adjudicated dependent and committed to DHS because [they] were without proper care or control, subsistence, [or] education as required by law or other care or control necessary for [their] physical, mental, or emotional health, or morals.  Based on these concerns, Latasha Parker, the Community

_____

[1] By filing six separate notices of appeal with one docket number on each notice, Mother has complied with the dictates of ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018), which held that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each of those cases."  ***See*** Pa.R.A.P. 341(a); ***see also Commonwealth v. Johnson***, 2020 PA Super 164 at *12 (Pa. Super. filed July 9, 2020) (en banc) (concluding that "in so far as [***Commonwealth v. Creese***, 216 A.3d 1142 (Pa. Super. 2019)] stated 'a notice of appeal may contain only one docket number[,]' . . . that pronouncement is overruled."); ***Commonwealth v. Larkin***, 2020 PA Super 163 at *3 (Pa. Super. filed July 9, 2020) (en banc) (recognizing that ***Johnson*** "expressly overruled ***Creese*** to the extent that ***Creese*** interpreted ***Walker*** as requiring the Superior Court to quash appeals when an appellant, who is appealing from multiple docket numbers, files notices of appeal with all of the docket numbers listed on each notice of appeal.").  Therefore, we shall proceed to address the issues raised on appeal.

Umbrella Agency (CUA) case manager, testified that her agency established case plan objectives for Mother.

On April 10, 2018, DHS filed petitions to involuntarily terminate Mother's parental rights to Children pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b) and to change the Children's permanenc[y] goal[s] to adoption. [The trial c]ourt conducted a combined termination and goal change hearing on October 25, 2019[, at which the following individuals were present: Mother; Attorney Craig Sokolow, counsel for Mother; Attorney Amy Skyles, counsel for DHS; Attorney Lisa Visco, Child Advocate; and Attorney Edelina Shuman, Children's guardian *ad litem*]. At the hearing, Ms. Parker testified that Mother's single case plan objectives were as follows: (1) address mental health and drug and alcohol issues; (2) complete three random drug screens; (3) have supervised visits [with Children] in line of sight at the agency; [and] (4) sign consents. Additionally, th[e c]ourt ordered Mother to do a CEU assessment. Regarding Mother's compliance with her objectives, Ms. Parker testified that . . . although Mother engaged in [] drug and alcohol treatment, Mother had not successfully completed th[e] program.

Mother was also offered supervised visits with [Children] but [did not] consistently visit[]. [Ms. Parker] testified that Mother visited [Children] on [October 16, 2019, six days before the termination hearing]. However, the last time Mother visited [Children] before that was on [October 20, 2018,] even though visits were still available to her. Mother had gone an entire year without visiting [Children]. [Ms. Parker] further testified that during the three years that this case has been active, Mother has only visited Children three times. With respect to [Children], Ms. Parker indicated that the foster parent[, C.D.,] is the [person] that meets all of their general and medical needs, that they share no bond with Mother, and that the primary caregiver bond is shared with [C.D.]. Ms. Parker also [testified] that it would be in the best interests of [Children] to terminate the rights of Mother.

Based [in part] on the foregoing testimony, th[e c]ourt issued a decree involuntarily terminating Mother's parental rights under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b), and f[ound], in accordance with [section] § 2511(b), that such termination best serves the developmental, physical, and emotional needs and welfare of [Children].

Trial Court Opinion, 12/3/19, at 1-3.

Mother filed a timely notice of appeal and contemporaneous[2] Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[3] She raises the following issues for our review: (1) whether the trial court erred in finding that "[DHS] met its burden in demonstrating that [M]other was unwilling or unable to remedy the conditions which brought [Children] into [its] care under 23 Pa.C.S.[A.] § 2511(a), and in changing the goal to adoption where CUA did

_____

[2] **See** Pa.R.A.P. 1925(a)(2) (in children's fast track cases, concise statement shall be filed and served with notice of appeal).

[3] On November 1, 2019, when Mother filed her Rule 1925(b) concise statement of errors complained of on appeal, she was represented by Attorney Craig B. Sokolow. Mother purported to raise the following issues for our review:

1. The trial court committed an error of law and abuse of discretion, in that the court did not take in account that [M]other had no CUA] representative for the last year before termination. Mother tried but could not get in touch with [CUA].

2. [Mother] asks the court to reverse the determination and to remand the case back to the court to allow [M]other to fulfill her objectives in that [CUA] did not do their stated mandate to help reunite [Children] with [Mother]. The trial court committed an error of law and abuse of discretion when it did this action.

Notice of Appeal, 11/1/19. Attorney Sokolow, Mother's original attorney, was suspended from the practice of law in Pennsylvania for two years, effective December 11, 2019. Thereafter, the trial court appointed new counsel for Mother, who filed her appellate brief, arguing that termination of her parental rights was unwarranted under Pa.C.S.A. §§ 2511 (a) and (b). **See** Brief of Appellant, at 11-18 ("Summary of the Argument" and "Argument"). Because the trial court interpreted the issues raised in Mother's Rule 1925(b) statement consistently with the issues raised in her appellate brief, and addressed those issues, we proceed to address the merits of her claims as they are presented in her "Argument" section.

not make reasonable efforts to reunify the family;" and (2) whether the trial court "erred in finding that [DHS] met its burden by clear and convincing evidence that terminating [M]other's rights would not cause irreparable harm and finding that changing the goal to adoption and terminating [M]other's parental rights would be in the best interests of [Children]" pursuant to 23 Pa.C.S.A. § 2511(b). *See* Brief of Appellant, at 12-18.

Our standard of review in cases involving the termination of parental rights is well-settled:

> [It] requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision [] should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

The termination of parental rights is governed by section 2511 of the Adoption Act,[4] which requires a two-step analysis. First, the party seeking termination must prove by clear and convincing evidence that the parent's conduct meets at least one of the grounds for termination set forth in section 2511(a). *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). This requires

---

[4] 23 Pa.C.S. §§ 2101-2938.

- 6 -

evidence "so clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1191, 1201 (Pa. Super. 2000) (en banc). If and only if grounds for termination are established under subsection (a) does a court then determine whether termination would be in the best interest of the child, considering his or her developmental, physical, and emotional needs and welfare, pursuant to subsection (b). *See In re Adoption of S.P.*, 47 A.3d 817, 827-30 (Pa. 2012).

Mother first argues that the trial court erred in concluding that DHS met its burden under section 2511(a) where: (1) CUA did not make reasonable efforts to assist Mother throughout the case; and (2) DHS failed to demonstrate by clear and convincing evidence that Mother made no effort towards finalizing Children's permanency plan by alleviating the conditions that led to their removal from her care. Upon review, we discern no error or abuse of discretion.

Mother's first claim that the trial court erred in terminating her parental rights under section 2511(a) requires this Court to find, as a matter of fact, that DHS/CUA did not provide Mother with reasonable efforts towards finalizing Children's permanency plan, *and* that this lack of reasonable efforts precludes termination of her parental rights. Mother does not cite any case law to support this proposition. In fact, our Supreme Court has held to the contrary, stating that "[n]either subsection [2511](a) nor (b) requires a court to consider the reasonable efforts provided to a parent prior to termination of

parental rights." ***In re D.C.D.***, 105 A.3d 662, 672 (Pa. 2014); ***see also*** 23 Pa.C.S.A. §§ 2511(a)-(b); ***In re T.M.W.***, 2020 PA Super 122 (Pa. Super. filed May 20, 2020) (distinguishing termination analysis under section 2511 of Adoption Act, which does not require court to consider reasonable efforts, from goal change analysis under 42 Pa.C.S.A. § 6351(f) of Juvenile Act, which entails consideration of reasonable efforts).

> [T]he provision or absence of reasonable efforts ***may*** be relevant to a court's consideration of both the grounds for termination and the best interests of the child. For example, as applicable to subsection (a)(2), a court may find an agency's lack of assistance to a parent relevant to whether a parent's incapacity "cannot or will not be remedied by the parent." Indeed, . . . a child welfare agency cannot refuse reasonable efforts to an incarcerated parent and then point to the resulting erosion in the parental bond created by the agency as justification for termination of parental rights. ***The fact that such a scenario can be articulated, however, does not transform the provision of reasonable efforts to reunite parents and children into a requirement for termination. Nothing in the law goes so far***, and the Superior Court erred in so holding.

***In re D.C.D.***, ***supra*** at 666 (emphasis added).[5] Moreover, a finding that DHS/CUA failed to provide Mother reasonable efforts towards finalizing

---

[5] Furthermore, the Pennsylvania Dependency Benchbook—to which Mother cites—further clarifies that, "[i]t is important to note that *the issue of whether the agency has made reasonable efforts to return a child home is distinct from the issue of whether the child should be returned home. Safety is always the* first consideration in all court decisions, including reunification." ***See*** Brief of Appellant, at 13 (quoting Pennsylvania Children's Roundtable Initiative, *Pennsylvania Dependency Benchbook*, Harrisburg, PA, Office of Children and Families in the Courts, 2010, at 82) (emphasis added). We acknowledge, too, that this is a secondary source referencing dependency proceedings, not binding caselaw.

Children's permanency plan is not supported by the record. Although this case was continued numerous times, the trial court explicitly found at each of the five permanency review hearings held from April 2017 to October 2019 that DHS/CUA made reasonable efforts to finalize Children's permanency plan, while Mother, in contrast, remained noncompliant with her plan goals.[6] At no point did the trial court find that DHS failed to provide Mother reasonable efforts towards finalizing Children's permanency plan. For these reasons, this portion of Mother's argument is without merit.

Mother further argues that the trial court erred or abused its discretion in finding that DHS proved by clear and convincing evidence that statutory grounds for termination exist under section 2511(a). She claims that she "made progress with her primary objectives of visitation and drug and alcohol [t]herapy[,] . . . explained that she visited with her children, . . . [and]

_____

[6] At the first permanency review hearing on April 20, 2017, the trial court found that DHS made reasonable efforts to finalize Children's permanency plan and that Mother was noncompliant. The trial court continued the matter on July 20, 2017 due to the unavailability of Mother's counsel and Children's guardian *ad litem*. On August 24, 2017, the trial court again found that DHS made reasonable efforts and that Mother was noncompliant. The matter was continued on November 2, 2017, at CUA's request. On January 3, 2018, the trial court once again found that DHS made reasonable efforts while Mother remained noncompliant. The case was continued: on April 11, 2018, to ensure that parents received notice of DHS's petition to terminate their parental rights; on August 8, 2018, at the request of DHS Assistant City Solicitor; on September 21, 2018, for an unspecified reason; and on December 21, 2018, due to Mother's unavailability. On January 30, 2019, the trial court found for the fourth time that Mother was noncompliant with the permanency plan despite DHS's reasonable efforts. The court granted a final continuance on May 31, 2019, after a new caseworker was assigned to Mother's case. On October 25, 2019, the trial court found once more that DHS made reasonable efforts to finalize Children's permanency plan.

testified that she participated in drug and alcohol counseling, provided random urine screens, and went for an assessment at the CEU." Brief of Appellant, at 14.

Pursuant to section 2511(a)(1), the rights of a parent may be involuntarily terminated after a petition has been filed if "[t]he parent[,] by conduct continuing for a period of at least six months immediately preceding the filing of the petition[,] has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1).

> There is no simple or easy definition of parental duties. ***Parental duty is best understood in relation to the needs of a child.*** A child needs love, protection, guidance, and support. ***These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child.***
>
> . . .
>
> This affirmative duty . . . requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> . . .
>
> ***Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with the child's physical and emotional needs.***

***In re Z.P.***, 994 A.2d 1108, 1118-19 (Pa. Super. 2010) (emphasis added).

Here, at the time of the termination hearing on October 25, 2019, Children had been in DHS's custody for almost three years—since January 2017. Although Mother was offered bi-weekly, line-of-sight supervised visits with Children throughout this time, she only attended three visits: one in

January 2018, one year after Children were removed from her care; one in October 2018 that lasted approximately thirty minutes; and one a year later, on October 16, 2019, which lasted for "[a]bout an hour." N.T. Termination Hearing, 10/25/19, at 19, 30, 38, 54. When asked why Mother only visited Children three times in three years, despite their living "[l]iterally down the street" from her, she testified that, "[s]ince they've been with [their foster mother,] I haven't really—I mean[,] something[']s always stopping me." *Id.* at 64.[7]

At the hearing, DHS also presented evidence that Mother has consistently failed to complete her primary single case plan objective of remaining drug free. Although Mother claimed to have completed three substance abuse programs, she did not provide any verification to DHS, CEU, her attorney, or the trial court. *See id.* at 73-76. Mother also admitted that since this case was initiated in 2017, she has "not [been able to stay drug free] for that long." *Id.* at 76. In fact, the record reflects that, throughout these proceedings, Mother abused multiple types of drugs: heroin while pregnant with K.K.; cocaine, per the January 19, 2017 CEU drug screen; and barbiturates, per the August 13, 2019 CEU drug screen. *See id.* at 11-18, 27-28; CEU Progress Report, 4/20/17; CEU Progress Report, 10/25/19. Indeed, Mother admitted to Ms. Parker on October 16, 2019—mere days

---

[7] Mother testified that she knowingly violated the trial court's orders by seeking Children out for unsupervised visits in the neighborhood where they lived, but she did not state with any specificity how often this occurred. N.T. Termination Hearing, 10/25/19, at 69-70.

before the termination hearing—that she continued to abuse substances. *Id.* at 36-37.

Additionally, Mother testified unequivocally at the termination hearing that she was not presently willing or able to perform parental duties for Children:

> Q:  Ma'am, you were aware that your children were in custody as of December 2016, correct?
>
> . . .
>
> A:  Yes.
>
> Q:  And are you ready now to be a mother to them?
>
> A:  I mean[,] today[,] do I think I could walk out of here with them? No.
>
> Q:  No.
>
> A:  I'm not saying that.  I'm not asking for that.  I'm just saying that I do want to still be in their lives.

N.T. Termination Hearing, 10/25/19, at 65-66.

We conclude that the record supports the trial court's finding that termination was proper pursuant to section 2511(a)(1) where Mother, "by conduct continuing for a period of at least six months immediately preceding the filing of the petition[,] has [] evidenced a settled purpose of relinquishing parental claim to [Children and] refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1).  Mother has not provided for Children's physical, emotional, or developmental needs for approximately three years; in fact, she has barely seen Children at all during this time.  Mother testified at the termination hearing that she was "aware that unless [she was] in complete

- 12 -

sobriety for an extended period of time[, the court] would [not] return [C]hildren to [her]." *Id.* at 78. Despite this, she failed to remain drug free. The trial court reasoned that because Children came into DHS' care as a result of Mother's substance abuse, her lack of efforts towards remaining sober demonstrates her lack of interest in caring for Children. Trial Court Opinion, 12/3/19, at 6.

In sum, we find that Mother's failure over 33 months to control her substance abuse issues, her passive interest, at best, in visiting and spending time with Children, and her admitted unwillingness or inability to perform parental duties amply support the trial court's conclusion that termination was proper under section 2511(a). *In re Z.P.*, *supra*; *In re C.S.*, *supra.*

While the trial court found that DHS also met its burden of proof under subsections (a)(2), (5), and (8), "we need only agree with its decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004). Accordingly, we turn to the second part of the two-step analysis. *In re Adoption of S.P.*, *supra*.

Under section 2511(b), the party seeking termination must also prove by clear and convincing evidence that termination is in the best interest of the child, with "primary consideration [given] to the developmental, physical, and emotional needs and welfare of the child." *In re Bowman*, 647 A.2d 217, 218 (Pa. Super. 1994); 23 Pa.C.S.A. § 2511(b). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child." *In re K.S.Z.*, 946 A.2d 753, 760 (Pa. Super. 2008).

The court must also consider "whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary[,] and beneficial relationship." *Id.* at 760. Mother argues that the trial court erred in finding that DHS met its burden of proving that termination would not cause irreparable harm to Children and would be in their best interests.

This Court has previously stated that,

[w]hen parents act in accordance with the natural bonds of parental affection, preservation of the parent-child bond is *prima facie* in the best interest of the child, and the state has no justification to terminate that bond. On the other hand, a court may properly terminate parental bonds [that] exist **in form** but not **in substance** when preservation of the parental bond would consign a child to an indefinite, unhappy, and unstable future devoid of the irreducible minimum parental care to which that child is entitled. It is important to keep in mind that the essential **needs** of the child and the **responsibilities** of the parent must be considered as well as the **rights** of the parent.

*In re J.W.*, 578 A.2d 952, 959 (Pa. Super. 1990) (citations omitted) (emphasis in original). The Pennsylvania Supreme Court stated in *In re T.S.M.*, *supra*, that "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *Id.* at 268.

Here, the record supports the trial court's findings that termination would be in the best interests of Children and would not cause any irreparable harm. DHS removed Children from Mother's care in January 2017, when R.N. was four-and-a-half years old, S.N. was three years old, and K.K. was three months old. At the time of termination, Children had spent 34 months outside

of Mother's care. N.T. Termination Hearing, 10/25/19, at 12-13. In determining that termination would best serve the needs and welfare of Children, the trial court "considered that Mother had not been able to meet [Children's] emotional, physical, and developmental needs, or provide [Children] with a healthy, safe environment for almost two and a half years prior to [termination]." Trial Court Opinion, 12/3/19, at 11. As explained above, Mother admitted that she has not been able to remain drug-free and could not, at the time of the termination hearing, "walk out" and "be a mother" to Children. *See id.* at 65-66, 78.

Ms. Parker explained that Children look to their foster mother, C.D., with whom they have lived throughout their entire time in placement, as their primary caregiver; C.D. tends to Children's daily needs (including stability, care, safety, and comfort) as well as their medical and educational needs, and Children call C.D. "mommy." *Id.* at 24-26, 46-48. In fact, K.K. did not recognize Mother as her parent during her visit the week of the termination hearing, and "didn't start warming up until the end when it was almost time to leave." *Id.* at 43. Ms. Parker testified that although Children have a *relationship* with Mother, they do not share a parent-child *bond*. *See id.* at 25; *see also In re J.W.*, *supra*. She concluded that termination would be in Children's best interests and would not cause them irreparable harm. N.T. Termination Hearing, 10/25/19, at 12-13 at 25-26. Mother, herself, plainly agreed:

> Q: [Y]our testimony with your attorney's questioning was that as

you sit here today, you're not in any position [to] take care of the three children?

A: Not to take them home. No. I'm not saying to take them home right now.

. . .

Q: [] You would agree with me that at this point in time that the best place for your children is with [C.D.] who is caring for them, correct?

A: Yes.

. . .

Q: And you'd agree with me that as a mother you love your children, but you want the best for them, correct?

A: Yes.

Q: And the best for them as we sit here today is to be with [C.D.], correct?

A: Yes.

*Id.* at 76-79. Moreover, Children's child advocate reported that she visited Children several times, most recently on September 28, 2019, and that "[C]hildren want to stay [with C.D.]. They are very happy there and they're well adjusted." *Id.* at 60.

We note that Mother did not ask that she be reunified with Children; instead, she asked for additional time to demonstrate her compliance with her objectives that had been implemented in January 2017. *See id.* at 66, 76. The trial court explained to Mother that:

when a case comes into th[e] courtroom[,] you have a certain period of time to correct whatever brought you here. You've had twice that amount of time. And as I sit here, we are in the same situation that we were in when this case first came in three years

- 16 -

ago. Your children deserve better. They deserve some permanency. They deserve some stability. And pursuant to the testimony that I've heard today[,] you haven't been able to give them that stability and it doesn't look like you're going to.

*Id.* at 83-84. The trial court properly considered Children's needs and Mother's lack of progress towards achieving her permanency goals in rendering its decision. *See In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006) ("The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.").

Based on the foregoing, we conclude the trial court did not commit an error of law or an abuse of discretion. *In re T.S.M.*, *supra*. Therefore, we affirm the court's orders changing the goal to adoption[8] and terminating Mother's parental rights to Children.

Orders affirmed.

---

[8] Although Mother references the goal change in her "Statement of Questions Involved" and the "Summary of [her] Argument," *see* Brief of Appellant at 3-11, she includes no meaningful discussion of the goal change in the "Argument" section of her brief. Instead, she focuses on whether termination was proper under sections 2511(a) and (b) of the Adoption Act. *See id.* at 11-18. We recognize that, in limited circumstances, the goal-change determination may play a significant role, but here, where Mother fails to develop the issue meaningfully in her appellate brief, and where the evidence supporting termination is so compelling, we conclude that Mother is entitled to no relief. *In re Z.P.*, *supra*; *In re Adoption of R.J.S.*, *supra*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2020