J-S24016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 283 WDA 2024 |

Appeal from the Order Entered February 14, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000007-2022

BEFORE: BOWES, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.: FILED: SEPTEMBER 30, 2024

A.F. ("Mother") appeals from the decree[1] involuntarily terminating her parental rights to her daughter, A.F. ("Child"), born in August 2018.[2] We affirm.

As the Orphans' Court stated,

> [Child] . . . tested positive for THC and cocaine at birth. The hospital referred the matter to [the Allegheny County Office of Children, Youth and Families ("CYF" or "the Agency")], which opened a case two days later. Father did not live with Mother and was not yet identified as the Child's father because Mother put forward Father and an alternative potential father.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Although the trial court used the term "order," termination of parental rights is accomplished by decree. *See* 23 Pa.C.S.A. § 2513(d).

[2] The court involuntarily terminated the parental rights of Child's father, A.M. ("Father"), via the same order. Father's appeal is addressed by separate memorandum at Superior Court Docket No. 303 WDA 2024.

* * * * *

Initially, Mother was compliant with services, testing weekly for drugs. Therefore, the case closed within two months . . .. However, CYF reopened the matter eight months later [in July] 2019, when [the Agency] was alerted to concerns about inappropriate discipline and Mother's relapse into substance abuse.

Mother was referred for a drug and alcohol assessment but landed in jail instead. During that time, [Child] stayed . . . with a woman who lived across the street from Mother. When Mother was subsequently released and able to participate in drug screens, she tested positive.[3] CYF arranged for in-home services to try to allow [Child] to live with Mother while she received help, but Mother did not engage with those services. Moreover, Mother often required corrections for her own behaviors when overseen by CYF.

Mother was tested and was positive again; thereafter, CYF sought and obtained an Emergency Custody Authorization [in January] 2020. . . . [, resulting in Child's removal].

* * * * *

In February 2020, at a proceeding at which Mother was present, the Child was adjudicated dependent as to Mother [and the court established a permanency goal of return to parent or guardian].[4] This [c]ourt ordered Mother to undergo drug and alcohol treatment and screening, attend parenting classes, and work on obtaining stable and appropriate housing. Mother's goals were expanded to include consistent visitation with [Child] and,

---

[3] At that time, the Agency found Mother's home to be "very messy" and "in [a] very deplorable condition." N.T., 1/12/23, at 21, 34.

[4] The court continued the adjudication as to Father pending genetic testing, ultimately adjudicating Child dependent as to an unknown father on November 16, 2020. *See* Agency Exhibit 1. We observe a disparity between some of the exhibit numbers placed on the record and that reflected on the actual documents in the certified record and refer to the exhibits by numbering used in the certified record.

- 2 -

later, participation in domestic violence programming after Mother reported that her paramour had broken her ribs.

Orphans' Court Opinion, 4/16/24, at 2-3 (record citations omitted).

Throughout the ensuing dependency, the court characterized Mother's compliance and progress as "none" or "minimal." *See* Agency Exhibits 1, 18; N.T. 1/12/23, at 30. Mother was offered, and participated in, supervised visitation with Child but did so inconsistently although she lived across the street from Child's foster placement for two-and-one-half years; when Mother did visit, she sometimes failed to provide Child with a meal or a snack. In November 2021, Child moved due to an adversarial relationship between Mother and Child's then-foster mother, whom she physically fought in July 2021, and on another occasion slapped. Mother's failure to pay her gas and electric bills also made her residence unsuitable for Winter visits. *See* N.T., 1/12/23, at 37-38, 48-54, 89-91; N.T., 2/8/24, at 64, 173-174.

In January 2022, the Agency filed a petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). The court held a hearing on the Agency's petition in March 2022, and subsequent evidentiary hearings in January 2023, and February 2024. Child was represented by KidsVoice.[5]

_____

[5] Pursuant to *In re Adoption of K.M.G.*, 240 A.3d 1218, 1236 (Pa. 2020), we must verify the court appointed counsel to represent Child, and if counsel served in a dual role, the court determined before appointment that there was no conflict between the child's best and legal interests. For children too young
*(Footnote Continued Next Page)*

At the hearings on the termination petition, Agency caseworker, Myia Weisend ("Ms. Weisend"),[6] testified about Mother's drug treatment, the squalor of her home, Mother's admission to ongoing substance abuse, Mother's inpatient drug treatment, Mother's 2019 incarceration, Mother's failures in August 2020, and March 2022, to complete outpatient drug services, Mother's refusal to participate in drug screens after May 2022, Mother's refusal to participate in mental health treatment, and Mother's removal from a court hearing due to vulgar language and behavior. *See* N.T., 1/12/23, at 1-21, 27, 30-34, 41-48, 86; *see also* Agency Exhibit 12. Ms. Weisend noted that, at the time of the January 2023 hearing, Mother had not participated in family plan meetings for the preceding eighteen months. *See*

_____

to express a preference, there is no conflict between the child's legal and best interests, and the child's right to counsel is satisfied by the appointment of an attorney-guardian *ad litem* ("GAL"). *See In re T.S.,* 192 A.3d 1080, 1092-93 (Pa. 2018).

Here, the Orphans' Court appointed KidsVoice, Child's guardian *ad litem* ("GAL") during the dependency proceedings, to represent Child's legal interests. *See* Order Appointing Legal Counsel, 3/7/22. The court also found, prior to testimony, that because Child was three years old there was "no divergence between her legal and her best interests." *See* N.T., 3/7/22, at 11. KidsVoice served as legal counsel and GAL at the hearing. *See* N.T., 2/8/24, at 221-223. We discern no structural error in the dual representation. *See In re T.S.*, 192 A.3d at 1092-93. KidsVoice subsequently filed a brief in this Court supporting the termination of Mother's parental rights.

[6] Ms. Weisend was the assigned caseworker for this matter from December 2019 until August 2022, and following educational leave, resumed her duties in January 2024. She testified she remained informed about the case during her leave. *See* N.T., 1/12/23, at 9; N.T., 2/8/24, at 62, 69, 65.

*id*. at 33.  Ms. Weisend averred Mother failed to follow through with inpatient treatment as recommended by substance abuse assessments, including one in March 2022.  *See* N.T., 1/12/23, at 43-44.

Ms. Weisend further testified Mother failed to appear for numerous random drug screens and tested positive for cocaine and THC at her last screening in May 2022.  *See* Agency Exhibit 8; N.T., 1/12/23, at 45-46.  Ms. Weisend stated Mother failed to complete a parenting course and failed to complete intimate partner violence counseling.  *See* N.T., 1/12/23, at 39-40.  Additionally, Ms. Weisend pointed out Mother did not always have functioning electric and gas service and was evicted from her home in July 2022.  *See id*. at 34-36, 47-48.  Ms. Weisend maintained Mother last attended a supervised visit with Child in September 2022, frequently missed appointments, causing Child emotional distress, and did not seek to resume visits.  *See id*. at 52-55, 75-76.  Ms. Weisend opined Mother failed to prioritize her relationship with Child and the conditions that led to Child's placement continue to exist.  *See id*. at 55-57.  Ms. Weisend indicated Mother has never attended Child's medical or dental appointments or been involved in her education.  *See id*. at 72-74.  Ms. Weisend stated the Agency believed termination was in Child's best interests, Child was happy in her new pre-adoptive home, and Child would not suffer any detriment if she did not see Mother again.  *See id*. at 78-80.

Mother was not present at the first termination hearing. Mother had used drugs one week before the second evidentiary hearing and attended that hearing virtually from an inpatient drug treatment program she entered four days earlier. *See* N.T., 2/8/24, at 63, 146-147, 167.

Dr. Eric Bernstein, an expert in child psychology and forensic psychology, testified he performed an individual assessment of Mother in January 2022. *See id*. at 6-8.[7] Dr. Bernstein said Mother admitted she continued to use crack cocaine and declared her intention to continue doing so, as well as her willingness to smoke marijuana whenever it is available. *See id*. at 8-9. Mother was unaware of Child's adjustment, development, or well-being and did not even know whether Child was toilet-trained. *See id*. at 10. Dr. Bernstein diagnosed Mother as having a cocaine dependence and a secondary major depressive disorder. *See id*.

Dr. Bernstein performed a Mother-Child bonding assessment in February 2022. *See id*. at 11. Mother manifested a limited knowledge of Child's development. *See id*. at 13. Dr. Bernstein observed a positive Mother-Child interaction. *See id*. at 17.

Dr. Bernstein conducted a bonding assessment of Child with foster parents in December 2023, whom he found responsive to Child's needs, knowledgeable and supportive, and determined they represented a healthy

_____

[7] Mother's avoidance of contact with the Agency prevented Dr. Bernstein from performing a subsequent evaluation. *See* N.T., 2/8/24, at 86.

and stable permanency resource. Dr. Bernstein further testified Child relies upon foster parents for her day-to-day and special needs to which they are understanding and responsive,[8] and they have created a family environment for her and modeled healthy communication, which Mother has not done in the four years since Dr. Bernstein has been involved in the case. *See id*. at 19-22, 34-35, 54-55.

Ms. Weisend testified that before seeking help for addiction services in November 2023, Mother had no contact with Child for more than one year, made no efforts during that time to achieve her goals of stable housing, receipt of drug, alcohol, or mental health treatment, and had not sent any cards, gifts, or money to Child or inquired about her medical appointments or education. *See id*. at 63-66, 85, 99-100. During that more than one year, Mother took no action to remedy the conditions that caused her to be incapable of caring for Child for more than four years. *See id*. at 80-81. Ms. Weisend opined termination of Mother's parental rights would serve Child's needs and welfare and allow for foster parents to adopt Child, giving her needed permanency. *See id*. at 83.

LaFayette Jones, a Wesley Family Services foster care coordinator, testified he has frequently visited Child in the foster home since June 2023,

---

[8] Child's special needs include trauma therapy, play therapy, and ADHD treatment. These services have improved Child's anger management. Child also has an individualized education program ("IEP"), in which foster parents have been involved. *See* N.T., 2/8/24, at 103-04, 115. 108, 119-20.

and foster parents are working well with her. *See id*. at 122-25. Bill Bedillion ("Mr. Bedillion"), Child's CYF casework supervisor for three-and-one-half years, stated Mother called him in November 2023, her first contact since he became Child's supervisor. *See id*. at 143-44. When they met, Mother said she had used crack cocaine three days earlier. *See id*. at 145. Mr. Bedillion opined termination would best serve Child's needs. *See id*. at 151, 161.

Mother testified virtually from an inpatient substance abuse treatment program; she claimed CYF failed to contact her for two years and she was not aware of her goals. *See id*. at 165-66. She said she had not used alcohol or drugs for one week prior to entering an inpatient program in February 2024. *See id*. at 167. She said she did not get a job but claimed her caseworker failed to keep her informed about meetings or sessions. *See id*. at 168-69. She asserted she made physical and mental improvements but admitted she had not made progress toward stable housing. *See id*. at 172.

Foster father described Child's attendance at trauma therapy and play therapy and described her IEP. He expressed his and his wife's desire to adopt Child and openness to continuing visitation for parents. *See id*. at 197-205.

At the conclusion of testimony and argument, the Orphans' Court found Mother had not been involved for at least four years of Child's life and granted CYF's petition pursuant to 23 Pa.C.S.A. 2511(a)(2) and (8). It noted: 1) Mother and Child tested positive for THC and cocaine at birth, 2) Mother tested positive for drugs the next month and ceased working with treatment

after one week, 3) CYS found Mother's home "unlivable" in January 2020, 4) Mother relapsed into addiction after drug treatment, 5) Mother inappropriately disciplined Child, 6) Mother was incarcerated in 2019, 7) Child lived with, and was raised, for two-and-one-half years, by a family friend, 8) Child lived with foster parents since May 2023, 9) Mother failed to visit Child throughout the lifetime of the case, 9) Mother spent years failing to attend to her drug addiction, 10) Mother failed to finish parenting classes and engaged in erratic behavior and physical altercations, used vulgar language, and was arrested in Child's presence, 11) Mother failed to complete intimate violence treatment, 12) Mother had no involvement in Child's medical care, 13) Mother's prolonged absences affected her bond with Child, and 14) Child bonded with foster parents, who meet her multiple and special needs. *See id*. at 224-229, 235-243.

By order dated February 8, 2024, and entered February 14, 2024, the trial court involuntarily terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (8), and (b), and changed Child's goal to adoption. Mother filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a responsive Rule 1925(a) opinion.

On appeal, Mother raises the following issues for our review:

[1.] Whether the [Orphans' Court] abused its discretion and/or erred as a matter of law in failing to identify the conflict of interest between [C]hild's position and the position advocated

- 9 -

by [C]hild's legal counsel therefore depriving [C]hild of the right to effective legal counsel[?]

[2.] Did the [Orphans' Court] abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.[A.] § 2511(a)(2) and (8)?

[3.] Did the [Orphans' Court] abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of [C]hild pursuant to 23 Pa.C.S.[A.] § 2511(b)?

Mother's Brief at 6 (issued reordered for purposes of review). [9]

In her first issue, Mother argues legal counsel failed to ascertain Child's desires, and advocate effectively for Child's legal interests "when the record is clear [Child] enjoyed [her] relationship with Mother." *See* Mother's Brief at 27-30.

"[A]n attorney acting as a child's legal counsel must, at a minimum, attempt to ascertain the child's preference and advocate on the child's behalf." *In re P.G.F*, 247 A.3d 955, 966 (Pa. 2021). A very young child may not understand the proceeding or be able to articulate a preference for their outcome, however, for children who may understand what is at stake to some

_____

[9] Although stated rather baldly, Mother's challenge to the sufficiency of the evidence regarding the grounds for termination under Section 2511(a) and (b) did not preclude the trial court's review, and we thus decline to find waiver. *See In re J.W.*, 578 A.2d 952, 956 (Pa. Super. 1990) (declining to find waiver on procedural grounds where issue was raised and considered in trial court, and it is in the best interests of the child to reach the merits of the claim).

degree and are able to express some preference, counsel "must make reasonable, but at the same time prudent, efforts to discern the child's desires." *Id*. (stating additionally the Court "will not mandate that an attorney convey highly sensitive, significant, and potentially emotionally damaging information to a child"). Legal counsel for a child is accorded "significant deference" in undertaking this challenging task.

The Orphans' Court found Child could only understand vaguely what was happening but wanted to remain with her foster parents. *See* Orphans' Court Opinion, 4/16/24, at 26-27.

The record supports the Orphans' Court's determination, and legal counsel properly fulfilled the requirement to ascertain Child's preference with discretion and discernment and advocate for her. *See In re P.G.F*, 247 A.3d at 966. Legal counsel, Jennifer McGarrity, Esquire ("Attorney McGarrity"), who also served as GAL, told the court she had met with Child multiple times as recently as the preceding week and to the extent Child was able to understand the concept of a "forever home," she "made it very clear that she wants to stay with [foster parents]." N.T., 2/8/24, at 223-24. Attorney McGarrity opined, based in part on those interactions, termination would best

serve Child's legal interests. ***See id***. at 224. Counsel thus properly represented Child's legal interests. ***See In re P.G.F***, 247 A.3d at 966.[10]

In her second issue, Mother challenges the sufficiency of the evidence sustaining the Orphans' Court's finding the evidence satisfied the requirements of 23 Pa.C.S.A. § 2311(a)(2), and (8).

Our standard of review in this context is well-established:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the [Orphans' Court's] findings of fact and credibility determinations if they are supported by the record. Where the [Orphans' Court's] factual findings are supported by the evidence, an appellate court may not disturb the [Orphans' Court's] ruling unless it has discerned an error of law or abuse of discretion.
>
> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion[,] or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to [Orphans' Courts], who often observe the parties first-hand across multiple hearings.
>
> In considering a petition to terminate parental rights, [the Orphans' Court] must balance the parent's fundamental right to

---

[10] That Child showed a fondness for Mother in February 2022, does not demonstrate error, given her subsequent absence. Dr. Bernstein testified that the lack of consistent contact between a parent and child with a bond was the "the equivalent of pulling a scab that constantly creates pain," and if parent and child had a limited bond or no bond, that absence would at a minimum disrupt the Child's daily routine. ***See*** N.T., 2/8/24, at 52-23 (Dr. Bernstein's testimony); ***id***. at 240-41 (Orphans' Court's summary of Dr. Bernstein's testimony about the detrimental effects of periods of prolonged or unexplained absence on a mother's bond with a child).

> make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (internal citations and quotation marks omitted; capitalization standardized).

Section 2511 of the Adoption Act ("the Act") governs the involuntary termination of parental rights. *See* 23 Pa.C.S.A. § 2511. Under the Act, the trial court must first determine whether the parent's conduct warrants termination under one of the grounds set forth at section 2511(a). Only if the court determines that the petitioner has established grounds for termination under Section 2511(a) does it assess the petition under Section 2511(b), which focuses upon the child's needs and welfare. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). To involuntarily terminate parental rights, the petitioner must satisfy both section 2511(a) and (b) by clear and convincing evidence. *See In re Adoption of C.M.*, 255 A.3d 343, 359 (Pa. 2021).

In this case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (8), and (b). To affirm the underlying decrees, we need only agree with the court's decision as to any one subsection of section 2511(a), in addition to section 2511(b). *See In re B.L.W.*, 843 A.2d

380, 384 (Pa. Super. 2004) (*en banc*). As such, we limit our discussion to section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for [her] physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. . ..

23 Pa.C.S.A. § 2511(a)(2), (b).

To prove the applicability of subsection (a)(2), the party petitioning for termination must establish: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) the causes of the incapacity, abuse, neglect or refusal cannot and will not be remedied. *See* 23 Pa.C.S.A. § 2511(a)(2); ***In re Adoption of A.H.***, 247 A.3d 439, 443 (Pa. Super. 2021). Subsection (a)(2) emphasizes the child's present

and future need for essential parental care, control, or subsistence. The statute "should not be read to compel courts to ignore a child's need for a stable home and strong continuous parental ties. . . . **This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it**." **In re Z.P.**, 994 A.2d 1108, 1117 (Pa. Super. 2010) (citation omitted) (emphasis in original). Section 2511(a)(2) is not limited to affirmative misconduct; it may be implicated by acts of refusal or incapacity to perform parental duties. **See In re S.C.**, 247 A.3d 1097, 1104 (Pa. Super. 2021), *abrogated on other grounds by* **Interest of K.T.**, 296 A.3d 1085, 1110 n.23 (Pa. 2023). We have long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. **See In re M.A.B.**, 166 A.3d 434, 443 (Pa. Super. 2017).

Mother acknowledges her drug abuse impaired her ability to care for Child. She nevertheless challenges the sufficiency of the evidence and asserts that the record failed to prove she could not provide adequate care when not under the influence of drugs. **See** Mother's Brief at 21. She notes Dr. Bernstein saw a positive interaction she had with Child when she was not under the influence of drugs. **See id.** at 21-22. Mother concludes that any concern with her ability to maintain her sobriety is "speculative." **See id.**

In finding the Agency established sufficient grounds to terminate Mother's parental rights pursuant to section 2511(a)(2), the Orphans' Court

recognized Mother's continuing substance abuse and limited efforts towards achieving reunification with Child over the preceding four years. The court reasoned, in part, as follows:

> Mother did not appear for the first day of testimony in this proceeding, and only late in 2023 did she talk again about drug and alcohol treatment. She could not manage to succeed in inpatient care even with the final hearing approaching although the facility did permit her to re-enter four days before the final hearing. This [c]ourt was not impressed by those four days. Mother needed to demonstrate consistent efforts to seek recovery. Mother . . . never even put a card in the mail to let [Child] know Mother even thought about her.
>
> Mother's testimony on the final day lacked substance. Mother could not identify a thing she had done toward her goals. Without any basis in fact, she declared that she had "more than the ability to take care of my daughter at any period of time in my life. . . ."
>
> Mother did not make the required diligent efforts toward prompt reunification and assumption of parental duties, walking f[a]rther and f[a]rther away from the Child. She has remedied no conditions that led to the Child's removal and demonstrated no capacity to do so now or at any time in the foreseeable future. Mother's assertions under Subsection (a)(2) are baseless.

Orphans' Court Opinion, 4/16/24, at 25-26 (record citations omitted).

We discern no abuse of discretion by the Orphans' Court in concluding termination pursuant to Section 2511(a)(2) is warranted. The record substantiates the conclusion Mother's repeated and continued incapacity, notably her persistent and unapologetic substance abuse caused Child to be without essential parental control or subsistence necessary for her physical and mental well-being, there were no additional services that could be provided, and no realistic prospect of Mother remedying the persistent

parental deficiencies. **See** N.T., 1/12/23, at 56; N.T., 2/8/24, at 81.[11] **See A.H.**, 247 A.3d at 443. The concern with Mother's sobriety is not "speculative" but well-founded, and the evidence abundant that she is unable to care for Child and failed to remedy or show she could remedy, the conditions that led to Child's placement. Clear and convincing evidence established the applicability of 23 Pa.C.S.A. §2511(a)(2). **See In re Z.P.**, 994 A.2d at 1117; **In re M.A.B.**, 166 A.3d at 443. **See also In re Adoption of R.J.S.**, 901 A.2d 502, 513 (Pa. Super. 2006) (stating, concerning 23 Pa.C.S.A. § 2311(a)(8), "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future").

Mother's **one week** of alleged sobriety at the time of the February 2024 evidentiary hearing, more than two years after the filing of the termination petition, more than four years after Child's removal and Mother's entry into in-patient drug treatment, does not alter the analysis. "A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity

---

[11] While we focus on Mother's incapacity due to her ongoing substance abuse, we note that Ms. Weisend testified that Mother had not met **any** of her reunification goals. **See** N.T., 2/8/24, at 66.

or availability of services, may properly be rejected as untimely or disingenuous." *In re S.C.*, 247 A.3d at 1105 (citation omitted).

Mother's final issue asserts the evidence failed to prove termination was in Child's best interests.

Section 2511(b) affords "primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). Our Supreme Court has generally outlined this inquiry, as follows:

> [C]ourts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent.
>
> Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis. We have observed the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. Thus, the court must determine each child's specific needs.
>
> Moreover, the child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. As further guidance, we have identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The courts must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

*K.T.*, 296 A.3d at 1105-06 (internal citations, quotation marks, and footnotes omitted).

"In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946

A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted). Moreover, when evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well." *Z.P.*, 994 A.2d at 1121 (internal citations omitted).

The extent of the bond-effect analysis is necessarily case-specific. *See In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). It is within the Orphans' Court's province to consider the totality of the circumstances when performing a needs and welfare analysis. *See M.E.*, 283 A.3d at 839. An Orphans' Court has the discretion to prioritize the safety and security of a child over her bonds with her parent and we will not disturb such an assessment if supported by the record. *See id*.

Mother contends Child has spent too short a time in her current foster placement for the court to make a reliable decision about Child's permanency needs and that no one had evaluated her bond with Child for two years. *See* Mother's Brief at 23-27.

In concluding Child's developmental, physical and emotional needs and welfare supported termination of Mother's parental rights, the Orphans' Court found termination of Mother's parental rights would not destroy a necessary or beneficial relationship because Mother failed to play a significant role in the Child's life for more than four years. *See* Orphans' Court Opinion, 4/16/24, at 28.

We perceive no abuse of discretion in the Orphans' Court's finding. Mother had no contact with Child between September 2022 and February 2024, her participation in prior supervised visitation was inconsistent, *see* N.T., 1/12/23, at 48-54; N.T., 2/8/24, at 64, 173-174, and Mother never sent Child cards, gifts, or money or inquired about Child's health and education, *see* N.T., 1/12/23, at 65; N.T., 2/8/24, at 66. Further, Child has formed a loving, safe, stable, and supportive bond with her pre-adoptive foster parents, who provide for all her needs, including her special needs. *See* N.T., 2/8/24, at 21, 81, 123, 198, 204. Child relies upon foster parents to provide a consistent level of day-to-day care, they are responsive to her needs, understand her needs, and provide her with supervision, all the necessary basic needs such as food, sleep, environment of safety, and offer her a balance of affection, protection, supervision, and support. *See id*. at 54. Foster father reported mutual affection shared by Child, his wife, and himself, whom Child regards as parents. *See id*. at 202-203. Foster parents are also responsive and attentive to Child's special needs and have aided Child's progress. *See id*. at 21-22, 103-105, 123-125, 151, 160-61, 200-202.

Further, Ms. Weisend testified the termination of Mother's parental rights would serve Child's needs and welfare. *See id.* at 82. She explained, "It would give [Child] permanency after all this time and for her to not feel like she was bouncing around everywhere. She . . . gets confused very often with the interactions. So, it would finally give her a sense of home and family

as she had stated to me when I had transported her a few weeks ago that she just wants to have a family." ***Id***. Dr. Bernstein testified he viewed foster parents as a healthy and stable permanency resource and endorsed their consideration for adoption, in part because Mother had not satisfied Child's daily needs. ***See id***. at 34-35, 54-55.

Although Mother challenges the fact Dr. Bernstein did not complete an updated assessment, ***see*** Mother's Brief at 26-27, she did not make herself available for such an assessment and her absence was itself destructive to any bond she previously had with Child. ***See*** N.T., 2/8/24, at 43, 52-53.

The record corroborates the Orphans' Court's determination that termination of Mother's parental rights would not sever a necessary and beneficial relationship and best serves Child's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b). ***See K.T.***, 296 A.3d at 1113. We discern no abuse of discretion and do not disturb the order involuntarily terminating Mother's parental rights.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>09/30/2024</u>